IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION


JAMES B. MOSLEY              )
                              )
v.                            )     No. 1:13-0055
                              )
NANCY A. BERRYHILL[1]       )
Acting Commissioner of Social Security    )


# M E M O R A N D U M

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner") denying his claim for a period of disability and Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket Entry No. 13), to which Defendant has responded (Docket Entry No. 18). Plaintiff has also filed a subsequent reply to Defendant's response (Docket Entry No. 19). This action is before the undersigned for all further proceedings pursuant to the consent of the parties and referral of the District Judge in accordance with 28 U.S.C. § 636(c) (Docket Entry No. 22).

Upon review of the administrative record as a whole and consideration of the parties' filings, Plaintiff's motion is **DENIED** and the decision of the Commissioner is **AFFIRMED**.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for former Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

# I. INTRODUCTION

Plaintiff filed an application for a period of disability and DIB on July 21, 2010. *See* Transcript of the Administrative Record (Docket Entry No. 10) at 70-71.[2] He alleged a disability onset date of February 1, 2008. AR 70-71.[3] Plaintiff asserted that he was unable to work due to blindness in the left eye, vision problems in the right eye, coronary artery disease, and headaches. AR 75, 79.

Plaintiff's applications were denied initially and upon reconsideration. AR 70-74. Pursuant to his request for a hearing before an administrative law judge ("ALJ"), Plaintiff testified at a hearing before ALJ Marty S. Turner on February 15, 2012. AR 31. On April 23, 2012, the ALJ denied the claim. AR 15-17. The Appeals Council denied Plaintiff's request for review of the ALJ's decision on April 15, 2013 (AR 1-3), thereby making the ALJ's decision the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

# II. THE ALJ FINDINGS

The ALJ issued an unfavorable decision on April 23, 2012. AR 15. Based upon the record, the ALJ made the following enumerated findings:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

---

[2] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding page number(s) as numbered in large black print on the bottom right corner of each page. All other filings are hereinafter referenced by the abbreviation "DE" followed by the corresponding docket entry number and page number(s) where appropriate.

[3] This was later amended to August 19, 2009. AR 18.

2.  The claimant has not engaged in substantial gainful activity since August 19, 2009, his amended alleged onset date (20 CFR 404.1571 *et seq.*).

3.  The claimant has the following severe impairments: Vision loss, coronary artery disease, and status post history of blood clots (20 CFR 404.1520(c)).

***

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

***

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). He can lift or carry up to 20 pounds occasionally and 10 pounds frequently[,] can sit, stand or walk up to 6 hours out of an 8-hour day with normal breaks, and is unlimited in his ability to push or pull. He can occasionally balance, stoop, kneel, crouch, crawl, and climb stairs or ramps, but never any ladders, ropes or scaffolds. He must avoid temperature extremes and exposure to workplace hazards such as moving machinery and unprotected heights. He is also limited to work that can be performed with monocular vision and that requires no more than occasional near acuity, occasional far acuity, occasional peripheral acuity and occasional depth perception.

***

6.  The claimant is unable to perform any of his past relevant work as a shipping clerk, heavy equipment operator, furnace operator, machine maintenance mechanic, or computer operator (20 CFR 404.1565).

***

7.  The claimant was born on November 19, 1959 and was 49 years old, which is defined as a younger individual age 18-49, on his amended alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age three months later on November 19, 2009 (20 CFR 404.1563).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a

finding that the claimant is "not disabled," whether or not he has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform (20 CFR 404.1569 and 404.1569(a)).

*** 

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 1, 2008, through the date of this decision (20 CFR 404.1520(g)).

AR 20-26.


# III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.


# IV. DISCUSSION AND CONCLUSIONS OF LAW

## A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence; and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r of Soc. Sec.*,

609 F.3d 847, 854 (6th Cir. 2010). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially similar to that in *Richardson*).

The Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See, e.g.*, *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g.*, *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

### B. Determining Disability at the Administrative Level

The claimant has the ultimate burden of establishing an entitlement to benefits by proving his "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). The asserted impairment(s) must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. §§ 432(d)(3) and 1382c(a)(3)(D); 20 C.F.R. §§ 404.1512(a), (c), and 404.1513(d). "Substantial gainful activity" not only includes previous work performed by the claimant, but also, considering the claimant's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which the claimant lives, or whether a specific job vacancy exists, or whether the claimant would be hired if he applied. 42 U.S.C. § 423(d)(2)(A).

In the proceedings before the Social Security Administration, the Commissioner must employ a five-step, sequential evaluation process in considering the issue of the claimant's alleged disability. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must show that he is not engaged in "substantial gainful activity" at the time disability benefits are sought. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007); 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that he suffers from a severe impairment that meets the 12-month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Edwards v. Comm'r of Soc. Sec.*, 113 F. App'x 83, 85 (6th Cir. 2004). Third, if the claimant has

satisfied the first two steps, the claimant is presumed disabled without further inquiry, regardless of age, education or work experience, if the impairment at issue either appears on the regulatory list of impairments that are sufficiently severe as to prevent any gainful employment or equals a listed impairment. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant is not required to show the existence of a listed impairment in order to be found disabled, but such showing results in an automatic finding of disability that ends the inquiry. *See Combs, supra*; *Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

If the claimant's impairment does not render him presumptively disabled, the fourth step evaluates the claimant's residual functional capacity in relationship to his past relevant work. *Combs, supra.* "Residual functional capacity" ("RFC") is defined as "the most [the claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1). In determining a claimant's RFC, for purposes of the analysis required at steps four and five, the ALJ is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988). At the fourth step, the claimant has the burden of proving an inability to perform past relevant work or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474. If the claimant cannot satisfy the burden at the fourth step, disability benefits must be denied because the claimant is not disabled. *Combs*, *supra.*

If a claimant is not presumed disabled but shows that past relevant work cannot be performed, the burden of production shifts at step five to the Commissioner to show that the

claimant, in light of the claimant's RFC, age, education, and work experience, can perform other substantial gainful employment and that such employment exists in significant numbers in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Walters v. Comm'r of Soc. Sec.*, 402 F.3d 525, 529 (6th Cir. 1997)). *See also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). To rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a claimant can perform. *Longworth*, 402 F.3d at 595. *See also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428, 77 L. Ed. 2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under appropriate circumstances). Even if the claimant's impairments prevent the claimant from doing past relevant work, if other work exists in significant numbers in the national economy that the claimant can perform, the claimant is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 C.F.R. § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a claim at step two of the evaluative process is appropriate in some circumstances).

### C.  The ALJ's Five-Step Evaluation of Plaintiff

In the instant case, the ALJ resolved Plaintiff's claim at step five of the five-step process. The ALJ determined that Plaintiff met the first two steps, but found at step three that Plaintiff

was not presumptively disabled because he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. At step five, the ALJ found that Plaintiff's RFC allowed him to perform work with express limitations to account for his severe impairments, and that considering his age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. AR 20-26.

### D. Plaintiff's Assertions of Error

Plaintiff argues that the ALJ erred by: (1) failing to properly consider whether his condition met the requirements of Listings 2.03 or 2.04; (2) failing to properly consider the opinion evidence provided by Drs. Jay Chapman, Robert Remke,[4] and Darrel Rinehart; and (3) failing to properly evaluate Plaintiff's credibility. DE 14 at 1. Plaintiff therefore requests that this case be reversed and benefits awarded, or, alternatively, that this case be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration by a new ALJ. *Id.* at 15-16.

Sentence four of 42 U.S.C. § 405(g) states the following:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g), 1383(c)(3). "In cases where there is an adequate record, the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and

---

[4] Both Plaintiff and the ALJ incorrectly refer to this provider as Dr. "Ramke." DE 14 at 9; AR 24.

evidence to the contrary is lacking." *Mowery*, 771 F.2d at 973. Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala,* 25 F.3d 316, 318 (1994). The Court will address each of Plaintiff's assertions of error below.

## 1. Listings 2.03 and 2.04.

Plaintiff asserts that the ALJ committed reversible error by failing to consider whether his condition meets the requirements contained in Listings 2.03 and 2.04 of Appendix 1 to Subpart P of Section 404. DE 14 at 7. Plaintiff argues that his significant visual limitations, which include blindness in the left eye and myopia in both eyes, should have triggered such an analysis. *Id*. Plaintiff notes that the ALJ's opinion makes no reference to either of these listings, and argues that the ALJ should have retained a medical expert "if [he] was unable to determine whether the requirements of these Listings were satisfied[.]" *Id*. at 7-8.

Notably, Plaintiff does not argue that his condition actually meets the criteria in either Listing 2.03 or 2.04, but instead contends that the ALJ erred by failing to consider such listings. This is significant because it is the claimant's burden to demonstrate, through medical evidence, that his impairments "meet *all* of the specified medical criteria contained in a particular listing." *Lance v. Astrue*, No. 3:07-cv-411, 2008 WL 3200718, at *4 (E.D. Tenn. Aug. 5, 2008) (citing *Riddle v. Halter*, 10 F. App'x 665, 667 (10th Cir. 2001)) (emphasis added); s*ee also Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 727-28 (6th Cir. 2004) ("[I]t is the burden of the claimant to show that he meets or equals [a] listed impairment.") (citing *Buress v. Sec'y of Health & Human Servs.,* 835 F.2d 139, 140 (6th Cir. 1987)). The undersigned agrees with other courts in this

circuit that have held that a "procedural lapse alone" at Step Three of the ALJ's evaluation "is not a sufficient reason for setting aside an administrative finding where the record supports the overall determination." *M.G. v. Comm'r of Soc. Sec.*, 861 F. Supp. 2d 846, 859-60 (E.D. Mich. 2012) (internal citation and quotations omitted). *See also NLRB v. Wyman-Gordon Co.,* 394 U.S. 759, 766, 89 S. Ct. 1426, 22 L. Ed. 2d 709 n.6 (1969) (stating that courts need not "convert judicial review of agency action into a ping-pong game" if "remand would be an idle and useless formality"). The issue, therefore, is whether the ALJ's failure to explicitly identify and analyze Listings 2.03 and 2.04 represents harmless error. *See M.G.*, 861 F. Supp. 2d at 860 (holding that the court must "review the record to determine whether the ALJ's failure to analyze the elements of [a specific listing] is harmless)."

Listing 2.03 involves "[c]ontraction of the visual field in the better eye," and requires the following:

    A.    The widest diameter subtending an angle around the point of fixation no greater than 20 degrees; OR

    B.    [A] [mean deviation] of 22 decibels or greater, determined by automated static threshold perimetry that measures the central 30 degrees of the visual field (see 2.00A6d); OR

    C.    A visual field efficiency of 20 percent or less, determined by kinetic perimetry (see 2.00A7c).

20 C.F.R. § 404, Subpt. P, App. 1, § 2.03. Listing 2.04 involves "[l]oss of visual efficiency, or visual impairment, in the better eye[,]" and requires:

    A.    A visual efficiency percentage of 20 or less after best correction (see 2.00A7d); OR

    B.    A visual impairment value of 1.00 or greater after best correction (see 2.00A8d).

20 C.F.R. § 404, Subpt. P, App. 1, § 2.04.

Although Plaintiff's brief recites some of the restrictions contained in reports provided by Dr. Jay Chapman and Dr. Robert Remke, none of the cited findings demonstrate equivalence with the very specific criteria contained in Listings 2.03 and 2.04. A medical source statement ("MSS") completed by Dr. Chapman indicates that Plaintiff suffers from myopia and struggles with far acuity and depth perception (AR 345), but these conditions do not satisfy the requirements delineated in either listing. The Court also notes that Dr. Chapman's office notes, though largely illegible, do not appear to include the particular testing required to derive the values indexed in Listings 2.03 and 2.04. AR 287-293.

The "visual limitation worksheet" completed Dr. Remke in March of 2011 opines that Plaintiff does not have useful binocular vision, and that Plaintiff "will have difficulty with driving [at] night" due to "poor visual acuity in [his] good eye." AR 351. However, this report similarly fails to provide measurements yielding the results required to meet the criteria in either listing, and Plaintiff fails to identify any evidence in Dr. Remke's medical records to suggest that any of the requirements in Listings 2.03 and 2.04 was met.

The Court also notes that the ALJ's opinion included the conclusion that "[t]he evidence does not support a finding that the claimant suffers from any Listing level impairment." AR 20. Though brief, this statement suggests that the ALJ considered whether Plaintiff's condition rose to the level of a listed impairment despite failing to provide a detailed description of his analysis. *See Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 254 (6th Cir. 2016) ("[W]e do not require an ALJ to discuss every piece of evidence in the record to substantiate the ALJ's decision.") (citing *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004)). Plaintiff

complains that the ALJ's consideration "stopped at that point and did not go any further," but fails to cite any case law or regulation that required the ALJ to provide any such written analysis in the opinion. The Court thus finds this argument unpersuasive.

"A claimant must do more than point to evidence on which the ALJ could have based his finding to raise a 'substantial question' as to whether he has satisfied a listing … the claimant must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432-33 (6th Cir. 2014) (internal citations omitted). Plaintiff points to no evidence that suggests equivalence with the requirements contained in Listings 2.03 and 2.04, but instead states broadly that the record demonstrates that "Plaintiff has significant limitations with respect to both eyes." DE 14 at 8. This claim, however, is insufficient to establish error in the ALJ's finding regarding the listed impairments. Therefore, to the extent that the ALJ committed error by failing to explicitly identify and evaluate Listings 2.03 and 2.04 with respect to Plaintiff's visual impairments, the Court finds that such error was harmless.

## 2. The opinions of Drs. Chapman, Remke, and Rinehart.

Plaintiff's next assertion of error entails various arguments. Plaintiff first claims that the ALJ committed reversible error by failing to give controlling weight to the opinion of Dr. Jay Chapman, an optometrist who opined that Plaintiff's myopia subjects him to several visual limitations that include: "occasional" near acuity; "rare" far acuity, depth perception, accommodation, and field of vision; and "frequent" color of vision. DE 14 at 9-12; AR 345. Plaintiff notes that the ALJ accorded great weight to "a portion" of Dr. Chapman's opinion, but gave limited weight to the remainder of the opinion. AR 23. Plaintiff argues that the ALJ failed

to provide "good reasons" for giving limited weight to this remaining portion of Dr. Chapman's opinion in violation of SSR 96-2p. 1996 WL 374188, at *5 (July 2, 1996).[5] Defendant does not dispute that Dr. Chapman represents a treating source.

Additionally, Plaintiff argues that the ALJ erred by giving great weight to the opinion of Dr. Robert Remke, an optometrist who completed a "visual limitation worksheet" that includes opinions regarding Plaintiff's visual impairment, yet failing to include all of Dr. Remke's limitations in the assigned RFC. DE 14 at 12. Plaintiff also argues that the ALJ erred by failing to specify the weight accorded to the opinion of Dr. Darrel Rinehart, a medical physician who performed a consultative examination of Plaintiff in September of 2010. AR 273. Based on these ostensible shortcomings, Plaintiff contends that the ALJ's analysis of these three opinions was insufficient and not supported by substantial evidence. DE 14 at 13.

Plaintiff is correct that a treating source's opinion, such as the MSS completed by Dr. Chapman, must be given controlling weight if is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence of record. SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996) (citing 20 C.F.R. § 404.1527(c)(2)). Here, the ALJ provided multiple reasons for discounting portions of Dr. Chapman's opinion based on record evidence. First, the ALJ rejected Dr. Chapman's claim that Plaintiff is unable to avoid ordinary hazards in the workplace based on Plaintiff's ability to drive, read, watch television, and complete puzzles, as well as the lack of significant change in Plaintiff's vision "in recent years," and based on Dr. Chapman's failure to explain why Plaintiff

_____

[5] Although not discussed by Plaintiff, the "good reasons" requirement is derived from 20 C.F.R. § 404.1527(c)(2): "We will always give good reasons in our notice of determination or decision for the weight we give to your treating source's opinion."

cannot avoid ordinary workplace hazards when his work history indicates that he has consistently been able to do so. AR 23. The ALJ also noted that despite Dr. Chapman's additional claim that Plaintiff "can't see what he is lifting," objective medical evidence and Plaintiff's reported activities undermine such an opinion. AR 23. Finally, with respect to Dr. Chapman's claim that Plaintiff can "rarely" perform work activities involving far acuity, accommodation, and field of vision, and only "occasionally" perform activities involving near acuity, the ALJ similarly stated that such an opinion "is not consistent with [Plaintiff's] work history and [his] reported activities." AR 24.

Plaintiff claims that Dr. Chapman's opinion is properly supported based on his "long treating relationship" with Plaintiff and his reference to myopia, the diagnosis that formed the basis of his opinion. DE 14 at 11; AR 344. Regardless of the length of a claimant's relationship with a treating source, however, the opinion rendered by that treating source must be consistent with other substantial evidence in the record. *Rogers*, 486 F.3d at 242 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Moreover, the Sixth Circuit has held that the mere diagnosis of an impairment "says nothing about the severity of the condition." *Higgs v. Bowen*, 880 F.2d at 863 (internal citation omitted). The ALJ explicitly stated that Dr. Chapman's opinion was inconsistent with Plaintiff's extensive work history and his activities of daily living, including his ability to care for his personal needs, cook, watch television, complete jigsaw puzzles, read, use a computer, shop, and attend school, the last of which requires Plaintiff to drive 52 miles three days per week. AR 23, 42.

Plaintiff does not dispute this reasoning in his brief, instead focusing on the ALJ's statement regarding Dr. Chapman's failure to explain why Plaintiff would be unable to avoid

ordinary hazards in the workplace. DE 14 at 11; AR 23. Plaintiff argues that this reasoning is "puzzling" because "[i]t seems obvious that this limitation would be the result of the claimant's restricted visual field." DE 14 at 11. The Court agrees that the ALJ's explanation with respect to Plaintiff's ability to avoid ordinary hazards in the workplace is less than ideal. The ALJ points to Plaintiff's "work history of being able to avoid ordinary hazards," even though Plaintiff specifically testified that he was fired from his last job for an accident that he alleged was caused by his visual impairment: "[M]y depth perception failed me. It – to the point where I just – I, I was closer to something than I thought I was, and I thought I was further away, and I actually wasn't." AR 43. Plaintiff was operating a forklift when the bumper of the machine "scrubbed across the corner of a stack behind [him]." AR 43-44. This appears to represent the type of "ordinary hazard" that Dr. Chapman believes Plaintiff will be unable to avoid.

Nevertheless, the Court finds that the ALJ's decision to discount, but not reject, the opinion of Dr. Chapman is, on balance, supported by substantial evidence. The ALJ notes that Plaintiff's visual acuity has not deteriorated in recent years, and references Plaintiff's final documented visit with Dr. Chapman in which he reported no vision problems and demonstrated correctable visual acuity of 20/60 in his right eye, which the American Optometric Association defines as "mild vision loss or near-normal vision." *Dematteo v. Astrue*, No. 2:09-cv-1588, 2010 WL 1904025, at *4 (W.D. Pa. May 10, 2010) (citing American Optometric Association, "Low Vision," *available at:* http://www.aoa.org/low-vision.xml (last visited February 16, 2017)). The ALJ also noted that Dr. Chapman's opinion that Plaintiff "can't see what he's lifting" (AR 345) is inconsistent with Plaintiff's reported work activities, which included "loading and unloading large trucks" and "inspecting loads for contaminants[.]" AR 36. Furthermore, the ALJ

discounted the opinion based on Dr. Chapman's failure to support his limitations with respect to near acuity, far acuity, accommodation, and field of vision (AR 23-24), a decision that finds support in this circuit. *See Molen v. Comm'r of Soc. Sec.*, No. 3:12-cv-286, 2013 WL 3322300, at *9 (S.D. Ohio July 1, 2013) ("An ALJ may properly discount a treating physician's findings based solely on the fact that the physician fails to explain any objective basis for the stated limitations."); *Morgan v. Astrue*, No. 3:10-cv-0299, 2011 WL 3714781, at *8 (S.D. Ohio July 20, 2011), *report and recommendation adopted sub nom. Morgan v. Comm'r of Soc. Sec.*, No. 3:10-cv-0299, 2011 WL 3739022 (S.D. Ohio Aug. 24, 2011) (affirming ALJ's decision to discount the opinion of treating physician who "merely checked certain lines on a questionnaire … without providing any supporting explanation for the limitations he set …").[6]

Additionally, and critical to the Court's findings, the ALJ posed a hypothetical to the vocational expert ("VE") during the hearing that included all of the visual restrictions recommended by Dr. Chapman with respect to near acuity, far acuity, depth perception, accommodation, color vision, and field of vision, to which the VE confirmed that a significant number of jobs would still be available. AR 62-63. The ALJ discussed this in the opinion:

> Even though these restrictions were not adopted in the RFC because they are not
> properly supported, it should be noted that the undersigned posed a hypothetical
> to the vocational expert with the restrictions set forth in section 8a of

---

[6] In his reply brief, Plaintiff argues that the ALJ "should have recontacted [Dr. Chapman] for clarification" instead of discounting his opinion based on this lack of explanation. DE 19-1 at 3. Plaintiff cites no opinion or regulation in support of this contention, which ignores his own burden to provide the ALJ with evidence sufficient to establish disability. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("The burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant.") (internal citation omitted).

Dr. Chapman's statement and the vocational expert opined that jobs would be available with those limitations.[7]

AR 24, n.1. This is significant to the undersigned's consideration because, even if Dr. Chapman's more restrictive limitations had been included in the ultimate RFC, Plaintiff would not have been found disabled based on the number of jobs available as described by the VE. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result.") (internal citation omitted).

Moreover, despite the ALJ's disregard for the alleged cause of Plaintiff's workplace accident, the Court agrees with the ALJ's judgment that Plaintiff's reported daily activities tend to undermine Dr. Chapman's claim that Plaintiff is incapable of avoiding ordinary hazards such as boxes, open doors, and approaching vehicles. As noted by the ALJ, Plaintiff's hobbies include reading, watching television, and completing number, word, and jigsaw puzzles. AR 165. While such activities are not comparable to typical work responsibilities, *Rogers*, 486 F.3d at 248, it strains credulity that an individual who engages in such activities would be unable to avoid an approaching vehicle. The same applies to Dr. Chapman's assertion that Plaintiff would be unable to work with the small objects referenced in the statutory definition of sedentary work, which include docket files, ledgers, and small tools. 20 C.F.R. § 404.1567(a). Dr. Chapman also stated that Plaintiff "has to hold things extremely close to read" in support of his findings (AR 344),

---

[7] "Section 8a" of Dr. Chapman's MSS refers to the limitations involving Plaintiff's ability to "rarely" perform work activities involving far acuity, depth perception, accommodation, and field of vision, "occasionally" perform activities involving near acuity, and "frequently" perform activities involving color vision. AR 345.

although the Court notes Plaintiff's testimony that this condition has existed for the entirety of his life, and thus does not represent a disabling condition. AR 56.

Plaintiff nonetheless argues that remand is necessary because "*all* of the limitations assigned by Dr. Chapman were not included in the hypothetical." DE 19-1 at 3. While it is true that the hypothetical did not explicitly involve Dr. Chapman's limitations that restricted Plaintiff to "frequent" lifting and carrying up to 20 pounds, it included a "light level of work" (AR 60, 62), which is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. 404.1567(b). Therefore, the hypothetical posed to the VE was actually more favorable to Plaintiff than Dr. Chapman's limitations with respect to lifting and carrying, which restrict Plaintiff to frequently lifting and carrying up to 20 pounds. AR 345.[8] Furthermore, even if Dr. Chapman's opinion regarding Plaintiff's exertional abilities had been more restrictive than the RFC ultimately adopted by the ALJ, Dr. Chapman is an optometrist whose opinion as to Plaintiff's capacity to lift, carry, stoop, and squat is usually accorded less weight than the opinion of a treating specialist. *See* 20. C.F.R. § 404.1527(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."); *Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 115 (6th Cir. 2008) (noting that

---

[8] Dr. Chapman's MSS also responds "yes" to a question asking whether Plaintiff would "have any difficulty walking up or down stairs." AR 345. However, as noted *infra*, "difficulty" with an activity does not constitute a definitive limitation that the ALJ was required to incorporate into the hypothetical question or the ultimate RFC.

opinions outside of a provider's area of expertise generally deserve less weight than an opinion from a specialist).[9]

As previously discussed, the ALJ's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley*, 581 F.3d at 406 (internal citation omitted). The Court concludes that there is substantial evidence to support the ALJ's decision to accord partial weight to the opinion of Dr. Chapman based on the foregoing analysis, and thus affirms the decision in that regard.

With respect to the opinion of Dr. Remke, Plaintiff argues that "all of the limitations assigned by Dr. [Remke] should have been incorporated into the RFC" in light of the ALJ's decision to accord great weight to this opinion. DE 19-1 at 2. Plaintiff does not, however, specify which limitations were improperly omitted from the ascribed RFC. Therefore, similar to his argument for remand based on the ALJ's alleged failure to assess his conditions pursuant to Listings 2.03 and 2.04, Plaintiff effectively argues that this matter should be remanded based on a "procedural lapse alone," *M.G.*, 861 F. Supp. 2d at 859-60 (internal citation and quotations omitted), which, as discussed *supra*, the Court finds insufficient to necessitate reversal of the Commissioner's decision.

Notwithstanding Plaintiff's deficient argument, the Court finds no basis for reversal of the Commissioner's decision based on the ALJ's analysis of Dr. Remke's opinion. Dr. Remke's

---

[9] The Court also notes that while Dr. Chapman's MSS opined that Plaintiff can "frequently" stoop, crouch, and squat (AR 345), the RFC assigned by the ALJ limited Plaintiff to "occasional" performance of such activities (AR 21), thus making the RFC more favorable physically than Dr. Chapman's MSS.

visual limitation worksheet includes a prepared list of opinions regarding the extent of Plaintiff's visual impairment, five of which were "checked" by Dr. Remke. AR 351. The first of these opinions states that Plaintiff's visual impairment "is considered permanent in nature," which does not provide any insight as to how the impairment limits Plaintiff's ability to perform work-related functions. A second states that Plaintiff's vision "creates serious limitations in performing activities such as cooking, cleaning, taking meds, etc.," which similarly sheds no light on Plaintiff's work-related capacities. The remaining three opinions are more germane to Plaintiff's ability to perform work activities: (1) the individual "does not have useful binocular vision," (2) the individual "would experience problems with employment in certain environments … due to restrictions in visual fields or poor acuity," including "around high-speed machinery" and "working at heights," and (3) the individual "has restrictions … on night driving." AR 351.

The opinion involving Plaintiff's lack of useful binocular was incorporated into the RFC, with the ALJ limiting Plaintiff to "work that can be performed with monocular vision[.]" AR 21. The ALJ also restricted Plaintiff from working around moving machinery and unprotected heights" (AR 21), which addresses Dr. Remke's opinion regarding Plaintiff's ability to work "in certain environments." AR 351.[10] The only limitation not addressed in the RFC was Dr. Remke's reference to "night driving," which represented the only opinion written by Dr. Remke: "[D]ue to poor visual acuity in [Plaintiff's] good eye, he will have difficulty with driving [at] night." AR 351. An assessment of "difficulty with driving," however, does not constitute a definitive

---

[10] This limitation also finds support in the opinions of Drs. Julian Goldberg, Gregory McCormack, and James Moore, all of whom reviewed Plaintiff's records and issued physical RFC assessments that were given "great" or "substantial" weight by the ALJ. AR 24, 278, 282, 286 301, 303, 307, 315.

functional limitation that the ALJ was required to incorporate into the RFC. *Cf. Mester v. Comm'r of Soc. Sec.*, No. 1:15-cv-0573, 2016 WL 2983736, at *6 (W.D. Mich. May 24, 2016) (affirming ALJ's decision to discount the opinion of a treating physician who "offered no definitive opinion regarding [the claimant's] limitations"). Furthermore, even if this assessment represented a definitive limitation, the ALJ did not commit legal error by failing to incorporate it into the RFC because such a determination "is expressly reserved to the Commissioner." *Ford v. Comm'r of Soc. Sec.*, 114 F. App'x 194, 198 (6th Cir. 2004) (citing 20 C.F.R. §§ 404.1527, 404.1546); *see also Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale."); *Smith v. Comm'r of Soc. Sec.*, No. 5:11-cv-2104, 2013 WL 1150133, at *11 (N.D. Ohio Mar. 19, 2013) ("Simply put, there is no legal requirement for an ALJ to explain each limitation or restriction he adopts or, conversely, does not adopt from a [non-treating] physician's opinion, even when it is given significant weight.").[11]

Plaintiff's argument regarding the ALJ's failure to state the specific weight given to Dr. Rinehart's opinion is also unavailing. Plaintiff fails to cite any opinion or regulation requiring the ALJ to specify the weight given to the opinion of a consultative examiner, although the Court notes that SSR 96-6p does require the ALJ to "explain the weight given to the opinions" of State agency medical consultants such as Dr. Rinehart. 1996 WL 374180, at *2 (July 2, 1996). However, the ALJ discussed Dr. Rinehart's findings, including his

---

[11] According to the evidence of record, Plaintiff saw Dr. Remke on one occasion prior to his completion of the visual limitation worksheet, but this visit took place specifically so that Plaintiff could obtain "a disability report on [his] eyes." AR 295.

recommendations regarding Plaintiff's ability to lift, stand, sit, and walk "for six to eight hours in [an] eight-hour workday without limitations." AR 22-23, 276.[12] Notably, the limitations included in the RFC are more favorable to Plaintiff than those recommended by Dr. Rinehart, as the ALJ limited Plaintiff to sitting, standing, and walking for "up to 6 hours," and assigned restrictions pertaining to Plaintiff's ability to lift that were absent from Dr. Rinehart's opinion. AR 20-21. Thus, to the extent that the ALJ erred by failing to identify the weight given to the opinion of Dr. Rinehart, the Court finds that such an error is harmless. *See Johnson v. Astrue*, No. 1:09-cv-2959, 2010 WL 5559542, at *6 (N.D. Ohio Dec. 3, 2010), *report and recommendation adopted,* No. 1:09-cv-2959, 2010 WL 5478604 (N.D. Ohio Dec. 30, 2010) ("A finding that [the claimant] was deprived of a substantial procedural right when the ALJ violated SSR 96-6p … by failing to articulate the weight ascribed to … State psychologists aggravates controlling Sixth Circuit precedent.").

### 3. Plaintiff's credibility.

Plaintiff finally argues that the ALJ failed to properly evaluate his credibility in violation of SSR 96-7p. DE 14 at 13.[13] Plaintiff contends the ALJ made a "conclusory statement" with respect to Plaintiff's hearing testimony, and failed to provide "sufficient reasons for finding the Plaintiff to not be credible[.]" *Id*. at 14-15. He further argues that the ALJ committed reversible error by failing to explicitly identify the weight he accorded Plaintiff's testimony. *Id*. at 14.

---

[12] The Court also notes Dr. Rinehart's statement that Plaintiff's "only real issue at this time is blindness in his left eye" (AR 275), a condition that Plaintiff has had since birth. AR 49.

[13] SSR 96-7p has been superseded by SSR 16-3p, which became effective on March 28, 2016. However, because Plaintiff's complaint was filed in June of 2013, SSR 96-7p applies to the undersigned's analysis of this claim.

An ALJ's credibility determination is subject to "substantial deference." *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994) (citing *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984)). In determining a claimant's credibility, the ALJ "must consider the entire case record[.]" SSR 96-7p, 1996 WL 473186, at *1 (July 2, 2996). In the instant case, the ALJ provided a detailed discussion of the case record to support his determination that Plaintiff's statements regarding the severity of his symptoms were not entirely credible. AR 21-23. The ALJ discussed Plaintiff's claim that he has been unable to adjust to his impaired eyesight despite the fact that his left eye blindness has existed since birth, he has worked in "several different occupations" during his life, and he is currently enrolled in vocational training, which involves driving 52 miles three days per week. AR 21-22, 39, 42, 49. Regarding Plaintiff's claim of worsening vision in his right eye, the ALJ noted that during his last documented visit with Dr. Chapman in November of 2010, Plaintiff reported no vision problems and had correctable visual acuity of 20/60 in his right eye, which denotes "mild vision loss or near-normal vision," as discussed *supra*. The ALJ also noted Dr. Remke's finding that Plaintiff's best correct visual acuity in the right eye was 20/50. AR 350.

Additionally, Plaintiff testified that he could stand and walk for no more than 15 to 20 minutes due to disabling leg pain. AR 53. The ALJ noted, however, Plaintiff's statements to Dr. Rinehart that he was able to "sit and stand without limitation during the day." AR 273. This assessment is consistent with Plaintiff's disability application paperwork, which included no complaints of leg pain or any allegations concerning difficulty with sitting, standing, or walking. AR 143, 151. The ALJ also noted Plaintiff's lack of treatment for any leg issues since February of 2007, which "may cast doubt on a claimant's assertions of disabling pain." *Strong v. Soc. Sec.*

*Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004) (internal citation omitted). Therefore, despite Plaintiff's assertion to the contrary, the ALJ provided numerous reasons for discounting his credibility.

The ALJ's determination must be affirmed as long as it is "reasonable and supported by substantial evidence." *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 476 (6th Cir. 2016) (quoting *Rogers*, 486 F.3d at 249). The Court concludes that the ALJ's determination in this matter was both reasonable and supported by substantial evidence. Accordingly, the Court rejects this assertion of error and affirms the decision of the Commissioner.

## V. CONCLUSION

For all of the above reasons, Plaintiff's motion for judgment on the administrative record (DE 14) is DENIED. An appropriate Order will accompany this memorandum.

BARBARA D. HOLMES
United States Magistrate Judge